PER CURIAM.
Johnny Lee King appeals the revocation and subsequent modification of his probation, as a result of which he is now required to serve a period of incarceration as a condition for continued probation. We hold that the evidence was insufficient to support the violation of probation charged and reverse.
Appellant was arrested on June 17, 1976 for possession of a stolen automobile after the arresting officer observed appellant driving a 1965 white Plymouth Valiant and verified through the police department computer that the car had been reported stolen. The resultant probation violation charge was that appellant “was unlawfully in possession” of a stolen automobile.
It undisputedly appears that Van Bryant, the owner of the car and appellant’s cousin, had driven appellant and one Dwight to a lounge on June 2, 1976. When appellant and Bryant,left the lounge to go home, the car wouldn’t start. Another friend drove appellant and Bryant home. After dropping appellant off, Bryant and the friend stopped back at the lounge and discovered that Bryant’s car was gone. Bryant then reported the car stolen. Appellant had previously used the car with Bryant’s permission, and Bryant testified that he would have lent appellant the car if appellant had asked.
It further appears that Dwight had managed to get the car started at the lounge that night before Bryant and the other friend returned, that he had driven it home that night because he had no other way to get home from the lounge, and that he had driven it out to appellant’s house a few days later because he figured Bryant would come there looking for it. The car died after Dwight reached appellant’s house and no attempt to restart it was made at the time. Appellant let the car sit for approximately two weeks until he was able to fix it. He was unaware that his cousin had reported it stolen. He did not attempt to contact Bryant because, he testified, he had no transportation and no telephone and did not know his cousin’s phone number, although he did know where Bryant lived and where he worked. Appellant finally did get the car running by replacing the distributor. He testified that he had fixed it the very morning of his arrest and was on his way to Bryant’s house to return the car when he was arrested.
*740 Appellant made a statement to the arresting officer at the time of his arrest. The officer testified that “he stated at some point that he didn’t steal the car. There was some fact made in mention that the car had broken down.” Bryant’s testimony as to appellant’s, explanation to him was also consistent with appellant’s testimony at the probation revocation hearing.
Although the arresting officer never asked appellant for his driver’s license, the trial judge asked appellant if he had a driver’s license. Appellant admitted his license had been “taken a long time ago.” The judge noted that appellant had been arrested nine or ten times between 1969 and 1972 for driving without a license. The judge then found appellant guilty of violating his probation as charged in the affidavit and warrant.
At the outset, we note that appellant was neither arrested for nor in any way charged with stealing or attempting to steal the automobile in question. The only statutes possibly applicable to the specific charge alleged, therefore, are Sections 812.-031, Florida Statutes (1975) (relating to receiving and concealing stolen property) and 812.041, Florida Statutes (1975) (relating to the unauthorized temporary use of a motor vehicle). The evidence before the trial court was insufficient to support either.
In order for appellant to be guilty of receiving stolen property, the automobile must first have been stolen. Youngblood v. State, 281 So.2d 230 (Fla.2d DCA 1973). Here, as in Youngblood, although the owner testified that he reported the property stolen, he never testified that it had in fact been stolen nor, under the evidence adduced, is it otherwise shown to have been “stolen.” On the contrary, it cannot even be inferred that Dwight, the original taker, took with the requisite intent permanently to deprive the owner.
With respect to the unauthorized temporary use of a motor vehicle (proscribed by Section 812.041, supra) such charge is expressly inapplicable if the vehicle is taken with the presumed consent of the owner. Section 812.041(2), Florida Statutes (1975). Here, appellant testified that, under the circumstances, he assumed his cousin would not object to his retaining custody of the car during the time he had it and, indeed, his cousin agreed. The state introduced no evidence to impeach or refute this testimony or the logical inferences arising therefrom. We think, therefore, that where appellant’s uncontradicted and unim-peached testimony explains his conduct and leaves him blameless, particularly when similarly exonerated by the “victim” of the alleged offense, the trial court is not authorized to revoke or modify his probation. See Larocco v. State, 276 So.2d 538 (Fla.4th DCA 1973).
In view whereof, it may be assumed that the trial court looked more at appellant’s having driven, without a license in making its determination of guilt than to the evidence relating to a “stolen” car or “unlawful possession” thereof. Although such conduct was clearly a violation of the law and therefore a violation of condition (4) of appellant’s probation (that he live honorably and not violate the law), appellant was not charged with this conduct. His probation could not therefore be revoked or modified on the basis thereof. Mack v. State, 342 So.2d 562 (Fla.2d DCA 1977).
Accordingly, the cause is reversed and remanded to the trial court for reinstatement of the original order placing appellant on probation.
BOARDMAN, C. J., and McNULTY and SCHEB, JJ., concur.